IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CACHET BECKHAM<br>27701 Sidney Avenue #29<br>Euclid, Ohio 44132<br><br>and<br><br>MARCUS A. LEWIS<br>27701 Sidney Avenue #29<br>Euclid, Ohio 44132<br><br>                   *Plaintiffs,*<br><br>-vs-<br><br>CITY OF EUCLID, OHIO<br>585 East 222nd Street<br>Euclid, Ohio 44123<br><br>and<br><br>STEVEN BUY<br>Euclid Probation Department<br>555 East 222nd Street<br>Euclid, Ohio 44123<br>*In his Individual and Official Capacities*<br><br>and<br><br>SHERRI TRAVIS<br>Euclid Probation Department<br>555 East 222nd Street<br>Euclid, Ohio 44123<br>*In her Individual and Official Capacities*<br><br>and | Case No. 1:14-CV-00696<br><br>Judge Donald C. Nugent<br><br><br><br><br><br><br><br>**AMENDED COMPLAINT**<br><br>(Jury Demand Endorsed Hereon) |

1

| | |
|---|---|
| ROBERT NOLAN<br>Euclid Police Department<br>545 East 222nd Street<br>Euclid, Ohio 44123<br>*In his Individual and Official Capacities*<br><br>and<br><br>RENEE MCINTYRE<br>Euclid Police Department<br>545 East 222nd Street<br>Euclid, Ohio 44123<br>*In her Individual and Official capacities*<br><br>and<br><br>VIC STEPEC<br>Euclid Police Department<br>545 East 222nd Street<br>Euclid, Ohio 44123<br>*In his Individual and Official Capacities*<br><br>            *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

NOW COME Plaintiffs Cachet Beckham and Marcus Lewis, by and through counsel, and bring this action against the City of Euclid, Steven Buy, Sherri Travis, Robert Nolan, Renee McIntyre, and Vic Stepec, and state:

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked under federal question jurisdiction provided by 28 U.S.C. §1331, in that Plaintiffs' complaint asserts violations of 42 U.S.C. §1983 and 42 U.S.C. §1988. Jurisdiction is also invoked under supplemental jurisdiction under 28 U.S.C. §1367, in that Plaintiffs' state claims are so related to their 42 U.S.C. §1983 claims that they form part of the same case or controversy.

2. Venue is proper in this Court under 28 U.S.C. §1391 because Defendants' actions took place in the Northern District of Ohio and Defendants are located in the Northern District of Ohio.

**PARTIES**

3. Plaintiffs description of the parties concern all times relevant to this Complaint.

4. Plaintiff Cachet Beckham and Marcus Lewis have been residents of the City of Euclid, Ohio and citizens of the United States.

5. Defendant City of Euclid ("Euclid") is a municipal corporation, a "person" for the purpose of Title 42, United States Code and the employer of Defendants Robert Nolan, Renee McIntyre, Vic Stepec, Stephen Buy, and Sherri Travis.

6. Defendants Robert Nolan, Renee McIntyre, and Vic Stepec are substituted as John Does # 1, 2 and 3, have been employed as a Euclid Police Officer assigned to the Warrant Unit and Corrections Officers, respectively, acting under color of official right, and within the regular course of his employment. They are sued in their individual and official capacities.

7. Defendants Steven Buy and Sherri Travis, are substituted for John Does #5 and 6, have been employed as a Probation Officer and Chief Probation Officer, respectively, in the Euclid Probation Department, acting under color of official right, and in the regular course of his employment. He is sued in his individual and official capacity.

**FACTS COMMON TO ALL COUNTS**

8. Cachet Beckham is 27 years old. is a graduate of Shaw High School. Although in and out of school due to family, graduated in 2005 with a 4.0 GPA in her senior year. She became a State licensed STNA in 2009 after receiving her certification from Cuyahoga Community College with honors.

9. Ms. Beckham worked for Legacy Home Health Care, Inc. as an STNA from February 2011, until she was terminated on April 1, 2013 because she failed to appear or call in between March 29, 2013, and April 2, 2013, while incarcerated as a result of Defendants' actions.

10. Marcus Lewis graduated from East High School in 2000. He currently attends Cuyahoga Community College and is employed full time as a professional cleaner for Precision First Cleaning Company.

11. The Euclid Probation Department is funded by Euclid in accord with O.R.C. 1901.026. Euclid Probation Officers' salaries are paid by Euclid in accord with O.R.C. 1901.33(A).

12. On February 28, 2013, Ms. Beckham and Mr. Lewis each timely appeared in the Euclid Municipal Court and pled no contest to citations they had received. They were each sentenced to a fine and costs and used an available court form to request community service in lieu of payment because of their low income, dependents, Section 8 housing, and food stamps.

13. The Court granted Plaintiffs' requests the next day and ordered them to appear at the Euclid Probation Department by March 11, 2013 to schedule their community service.

14. On March 7, 2013, Ms. Beckham and Mr. Lewis appeared at the Probation Department and signed in.

15. After signing in, they met with Chief Probation Officer Defendant Sherri Travis and were interviewed. They chose Court Community Service ("CCS") for their service and Ms. Travis referred them for scheduling and assignment, preparing and faxing Client Data Sheets to CCS the same day. They were given until May 7, 2013 to complete their community service hours.

4

16. At least 9 documents dated March 7, 2013 were generated by their visit.

17. To track compliance with court-ordered community service, the Probation Department has a file folder system: Court orders for community service are placed into a manila folder. When persons appear, the court order is removed from the folder and placed in a binder for active community service. Periodically a Probation Officer looks into the manila file to see if there is an order inside which requires appearance on a date that has passed. The officer prepares a list of the persons whose orders are in the manila folder after their appearance date has passed. The list is denominated "Request for Warrants" and is submitted as a warrant request.

18. On March 18, 2013, Ms. Beckham and Mr. Lewis called CCS. On March 25, 2013 they each paid the $65 fee and were scheduled to perform their community service at Goodwill Industries, 33459 Vine Street, in Eastlake, Ohio, beginning on March 27, 2013 at 10:00 a.m. They worked at Goodwill on March 27 and again on March 28.

19. On March 14, 2013, using Euclid's file folder system, Officer Buy looked into the manila folder and saw Orders directing Ms. Beckham and Mr. Lewis to appear within ten (10) days of March 1, 2013, which had gone by. He placed their names on a request for warrants. He did not sign the list or include any underlying factual information.

20. The warrants were facially invalid, conclusory and unsupported by attested facts. The recitation of the notary language "sworn to and subscribed in my presence" is not accompanied by any sworn statement of fact or the name or signature of the affiant. The warrants contain only the signature of the deputy clerk before whom they were allegedly sworn. There was no indicia of probable cause, on a separate document or on face and no other information upon which Nolan might have probable cause.

21.  The warrants contain only the conclusory unattested statement that the named defendant has failed to appear to answer charges of "513.14 d/paraph.", "513.025 cul. of marij.", "failure of community service". This language is internally inconsistent and leads to an impossible conclusion.

22.  The warrants issued are facially invalid because there is no supporting affidavit or statement of supporting fact.

23.  At some point, Euclid Police Department employee Edie Stanek, entered the warrants into the Law Enforcement Agencies Data System ("LEADS") and requested a warrant block.

24.  On March 28, 2013, at approximately 4:00 p.m., after their second day of community service at Goodwill, Ms. Beckham was driving her gray 1999 Ford Taurus from Goodwill on Vine Street to Willowick Academy Day Care on Vine Street to pick up their children. They had with them two documents from CCS: (1) Guidelines for Program Participants assigning them to Eastlake Goodwill, showing the address on Vine Street, the March 27, 2013 10:00 a.m. start date and time, the name and phone number of their supervisor, and (2) the march 25, 2013 receipt for payment of the community service fees.

25.  When Plaintiffs, who are African American, stopped to get gas at the Willowick Speedway gas station, a Willowick police officer decided to run Ms. Beckham's license plate and found the Euclid warrants. They were arrested, handcuffed, placed into a cruiser, and transported to the Lake/Cuyahoga County line to be delivered to Euclid. Ms. Beckham, three months pregnant, was handcuffed to her belt.

6

26. Patrolman Robert Nolan an experienced officer assigned to the Warrant Unit, acting under the facially invalid arrest warrants, took custody of Plaintiffs at the County line. Plaintiffs explained to Officer Nolan they were on the way from community service to pick up their children when arrested and that they had paperwork documenting this. Officer Nolan refused to look at the documents although there was no other probable cause, no complaint or affidavit, and the warrants for "Failure of Community Service" were facially insufficient.

27. Nolan delivered Plaintiffs to the Euclid Jail At around 5:00 p.m. on Thursday, March 28th. Corrections officers Renee McIntyre booked Ms. Beckham and Vic Stepec booked Mr. Lewis.

28. Ms. Beckham begged Ms. McIntyre to look at the community service documents, telling her that she was pregnant and had to pick up her children by 6:00 p.m. when the day care closed. Mr. Lewis showed Stepec his official community service paperwork. Neither Nolan, McIntyre or Stepec communicated this information to anyone or took any action to verify or confirm the information.

29. At 4:38 a.m., Ms. Beckham was again handcuffed to a belt and driven to the Lake County Adult Detention Facility. She was again booked and at 5:20 a.m. placed into a cell where she remained until Tuesday April 2.

30. On April 1, 2013 Officer Nolan returned both arrest warrants to the Euclid Municipal Court and still failed to advise anyone as to what Plaintiffs told him or to bring Ms. Beckham from Lake County to the Court until the next day.

31. At hearing on April 1st, Mr. Lewis was released. On April 2, 2013, over five days after her arrest, Ms. Beckham was transported back to Euclid Jail and placed in a holding cell until her 10:00 a.m. hearing. When she was ordered released by the Court she was returned to

7

custody until 1:00 p.m. and finally released. Her money and car had been seized. She walked home.

32. As a direct result of Defendants' actions and omissions, separately and together, Ms. Beckham lost her job at Legacy Home Health Care for failure to report for work. She suffered from morning sickness throughout her detention. Both Ms. Beckham and Mr. Lewis suffered economic, personal, emotional and psychological humiliation loss and injury which continues.

## COUNT I

### 42 U.S.C. §§ 1983 and 1988

### (Violation of Plaintiff's Federal Civil Rights by Defendants Buy, Travis, Nolan, McIntyre and Stepec in their individual capacities – Fourth, Fourteenth Amendments (Unreasonable Seizure and Detention)

33. Plaintiffs reaffirm and reallege Paragraphs 1 through 32 of this Complaint as if fully rewritten.

34. While acting under the color of law, Euclid police officers and employees deprived Plaintiffs of their rights to liberty and to be free from unreasonable seizure and detention under the Fourth and Fourteenth Amendments to the U.S. Constitution.

35. Plaintiffs were seized without probable cause and detained without cause, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

36. Steven Buy and Sherri Travis did not have cause to arrest either Cachet Beckham or Marcus Lewis but nevertheless issued and published warrants which resulted in their arrest.

37. Euclid Police Officers Nolan, McIntyre and Stepec arrested and assisted in the arrest and detention of Plaintiffs when they knew or should have known there was no cause to do so.

38. The acts of Defendants were willful and performed with reckless disregard for the rights of Plaintiffs.

39. These rights were clearly established at the time and a reasonable person would have known of their existence.

40. The actions of Travis, Buy, Nolan, McIntyre and Stepec were objectively unreasonable and constituted reckless indifference to the rights and welfare of Ms. Beckham and Mr. Lewis.

## COUNT II

### 42 U.S.C. § 1983

#### (Violation of Plaintiffs' Federal Civil Rights by Defendants City of Euclid, Buy and Travis in their official capacities – Fourth and Fourteenth Amendments)

41. Plaintiffs reaffirm and reallege Paragraphs 1 through 40 of this Complaint as if fully rewritten.

42. The Euclid file folder system was instituted by Chief Probation Officer Sherri Travis, who along with Probation Officer Buy knew or should have known that if an order directing appearance was not in the manila file when a person appeared to schedule community service, it might arrive later and be placed in the manila folder after they appeared.

43. Euclid tolerated and permitted the probation officers to continue a practice so reckless that unlawful arrest was an obvious consequence, thereby ratifying the actions of Travis and Buy.

44. At all times relevant to this complaint, the conduct of Officers Buy and Travis conformed to an official policy or custom tolerated by Euclid in deprivation of Plaintiffs' rights.

## COUNT III

### 42 U.S.C. § 1983

**(Violation of Plaintiffs' Federal Civil Rights
by Defendants Nolan, McIntyre, and Stepec in their official capacities,
and City of Euclid
- Fourth and Fourteenth Amendments)**

45. Plaintiffs reaffirm and reallege Paragraphs 1 through 44 of this Complaint as if fully rewritten.

46. Defendant City of Euclid had notice or constructive notice of persistent patterns, policies, practices, and customs of the City Police Department and other personnel including Defendant John Does to deprive citizens of their rights to liberty, to be free from arrest and detention without reasonable cause and from the use of excessive force. The deliberate indifference of the City, in itself, constitutes an official policy which was the moving force behind the deprivation of Plaintiffs' rights. By their indifference, Defendant City implicitly authorized, approved, and knowingly acquiesced in the unconstitutional conduct against Plaintiffs.

47. Euclid failed to properly train its police and corrections officers as to the correct procedure and circumstances in which an officer may arrest or detain an individual. Euclid's deliberate indifference to and toleration of the failure of the officers to protect the right to be free

10

of arrest and incarceration without probable cause constituted violations of Plaintiffs' Fourth and Fourteenth Amendment rights and their rights under Article I of the Constitution of Ohio.

48. At all times relevant to this complaint, the conduct of Officers Nolan, McIntyre, and Stepec conformed to the official policy or custom of Euclid which was a moving force behind the deprivation of Plaintiffs' rights.

### COUNT IV

### (State Law Claim of Negligent Identification by Defendants Buy and Travis individually)

49. Plaintiffs reaffirm and reallege Paragraphs 1 through 48 of this Complaint as if fully rewritten.

50. Mr. Buy and Ms. Travis owed Plaintiffs a duty to conduct a reasonable investigation to determine whether Plaintiffs had in fact failed to appear as ordered by the court before seeking warrants for their arrest.

51. A simple review by Mr. Buy and Ms. Travis of their own files and sign-in sheets would have revealed that Plaintiffs had timely appeared. Defendants' failure to look was reckless and malicious.

52. As a direct and proximate result of Defendants' negligent identification of Plaintiffs as persons guilty of criminal contempt, warrants were issued for the arrest of Plaintiffs.

53. As a further direct and proximate result of Defendants' negligent identification, Mr. Lewis and Ms. Beckham were unlawfully arrested without cause on March 28, 2013, and incarcerated for 4 and 5 days, respectively, incurring economic, personal, emotional, and psychological injury, which continues.

11

**WHEREFORE,** Cachet Beckham and Marcus Lewis ask the Court to award damages to them and against Defendants that will fully, fairly, and adequately compensate them for their injury, damage, and loss, plus costs, attorney fees under 42 U.S.C. § 1988, pre-judgment interest, punitive damages where permitted, and all other relief which this Court deems appropriate under the circumstances.

Respectfully submitted,

*/s/ Nancy C. Schuster*
NANCY C. SCHUSTER #0020690
Schuster & Simmons Co., L.P.A.
2913 Clinton Avenue
Cleveland, Ohio 44113
(216) 348-1100 (Telephone)
(216) 348-0013 (Facsimile)
ss@apk.net

*Counsel for Plaintiffs*

## JURY TRIAL DEMAND

Plaintiffs seek a trial by jury as to all matters, issues, claims, and demand for damages or relief, which may be tried and decided by a jury.

*/s/ Nancy C. Schuster*
NANCY C. SCHUSTER #0020690

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed electronically this 27th day of March, 2015. Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System. Parties may access this filing through the Court's system.

                                                                                */s/ Nancy C. Schuster*
                                                           NANCY C. SCHUSTER #0020690

                                                           *Counsel for Plaintiffs*