IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CACHET BECKHAM, *et al.* | ) | Case No. 1:14-cv-00696 |
| | ) | |
| Plaintiffs, | ) | Judge Donald C. Nugent |
| | ) | |
| -*vs*- | ) | |
| | ) | |
| CITY OF EUCLID, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**Plaintiffs'** *Combined* **Sur-Reply to the Motions for Summary Judgment of
(1) Defendants City of Euclid, Renee McIntyre and Vic Stepec (R. 64) and
(2) Defendants Steven Buy, Sherri Travis and Robert Nolan (R. 65)
(Oral Argument previously requested)**

Now come Plaintiffs Cachet Beckham and Marcus Lewis, by and through counsel, and ask the Court to deny the Motions for Summary Judgment of Defendants Euclid, Stepec and McIntyre (R. 64) and Defendants Buy, Travis and Nolan (R. 65); for the reasons set out in the attached Brief and in their Combined Opposition (R. 69-1)[1].

Respectfully submitted,

__/s/ Brian M. White_____
NANCY C. SCHUSTER #0020690
BRIAN M. WHITE #0091405
Schuster & Simmons Co. L.P.A.
The Bevelin House
2913 Clinton Avenue
Cleveland, Ohio 44113
(216) 348-1100 (Telephone)
(216) 348-0013 (Facsimile)
ss@apk.net (e-mail)

*Counsel for Plaintiffs*

---

[1]  Together with the Table of Contents, Affidavit and Exhibits 1-26 filed with R. 70, Motion to Attach (granted by the Court on November 12, 2015).

**BRIEF**

I. <u>INTRODUCTION</u>

Defendants Steven Buy, Sherri Travis and Robert Nolan moved for Summary Judgment on September 21, 2015 and Defendants City of Euclid, Vic Stepec and Renee McIntyre (altogether "Defendants") separately moved for Summary Judgment on the same day.  Through both motions, and in their replies, Defendants have argued that the warrants which resulted in the arrest of Plaintiffs Cachet Beckham and Marcus Lewis were without question bench warrants which were facially valid and were also valid judicial orders.  To support these arguments and the theory that the various defendants are entitled to judicial and also qualified immunity, in their Reply Brief, Buy, Travis and Nolan direct the Court to copies of the backs of the Beckham and Lewis Municipal Court case jackets on which there is handwriting stated to be the judge's. (R. 65, Buy/Travis/Nolan MSJ, at p. 3.)

Plaintiffs have agreed that on the front side of the case jackets there is writing at the bottom that appears to be, and could be, the signature of Judge LeBarron and that, as Defendants say, the mid-back of the file jacket contains the following unsigned phrase in hand writing: "3-15-13 capias to issue fail of c/s $5,000 at 10%". But as Plaintiffs have pointed out in their Brief in Opposition, there is no signature as required for a valid order and, signed or not, the words have not been filed and do not appear on the docket of either Marcus or Cachet's case. (R. 69-1, Plaintiffs' Opposition at p. 18; the Euclid Case Dockets for Cachet Beckham and Marcus Lewis are attached as Exhibits 27 and 28, respectively.)

2

In their Reply, *for the first time,* Defendants now offer an affidavit from Judge LeBarron that the writing is hers. At this point in the litigation, the position of both parties is clear. The Defendants want to convince the Court that the warrants are valid bench warrants and that therefore (1) Ohio Crim Rules 3 and 4 which require a sworn statement of probable cause attached to or stated on the face of the warrant, do not apply; and (2) the warrants are orders by the Court and confer quasi-judicial immunity upon those making arrests upon the warrants, with or without probable cause.

Plaintiffs have responded that these are Clerk's Warrants, not Bench Warrants and in accord with R.C. 2935.18 and Crim. Rules 3 and 4(A) probable cause must be sworn and be apparent on face for the warrants to be valid. And they are not bench warrants, because there is no valid order to the clerk, who quite obviously issued the warrants. Despite Defendants considerable effort, there remain genuine issues of fact and law whether these warrants were facially valid – or valid – and whether they were judicially ordered.

II.  **LAW AND ARGUMENT**

As Defendants well know: (1) an officer is not entitled to judicial immunity or qualified immunity for wrongful arrest when the underlying warrants are not facially valid**.** *Webb v. Greene Cty. Sherriff's Office*, 494 F.Supp.2d 779 (S.D. Ohio 2007); *Sampson v. City of Xenia*, 108 F. Supp. 2d 821 (S.D. Ohio 1999). Even if Judge LeBarron wrote the words "3-15-13 capias to issue fail of C/S $5,000 @ 10%", the warrants, facially valid or not, are not the product of a valid court order. *City of Cleveland v. Ricci*, 8th Dist. No. 40392, 1980 WL 354526, *1 (Feb. 14, 1980) ("It is axiomatic that an order affecting the rights of a litigant must be signed by the judge presiding over the case"); and (2) whether an officer's arrest pursuant to a facially invalid

3

warrant can not be objectively reasonable without some source of probable cause outside the four corners of the warrant. *Webb v. Greene Cty. Sherriff's Office*, 494 F.Supp.2d 779 (S.D. Ohio 2007); *Sampson v. City of Xenia*, 108 F. Supp. 2d 821 (S.D. Ohio 1999).[2]

### A. The Warrants Are Not Facially Valid.

In Reply, Defendants continue to argue that "Plaintiffs have failed to identify any defect apparent on the face of the warrants issued for the arrest of Plaintiffs" and they offer an affidavit for the first time on reply. (R. 73, Euclid/Stepec/McIntyre Reply at p. 3; R. 72, Buy/Travis/Nolan Reply at p. 3.) In Judge LeBarron's affidavit she states:

> 12. On March 14, 2013, I received from Probation Officer Steven Buy a signed memorandum listing of individuals who had failed to comply with court orders to contact the probation department, in person, in order to sign up for community service.

(R. 72-1, LeBarron Affid. at ¶ 12.)

Contrary to Judge LeBarron's affidavit, Mr. Buy's memo said "Warrants requested [sic] for Failure of Community Service", and in no place does it list "individuals who had failed to comply with court orders to contact the probation department, in person, in order to sign up for community service." Next, Judge LeBarron states:

> 13. On this memorandum appeared the names Cachet Beckham and Marcus Lewis.
>
> 14. On March 15, 2013, I issued a Capias for Failure of Community Service for Cachet Beckham pursuant to ORC §2705.02 and ORC §2705.03 based upon the memorandum indicating that Cachet Beckham had failed to comply with my March 1, 2013 Court Order. . . . In issuing this Capias, I wrote a journal entry on the case jacket for *Euclid v. Beckham*, 13 CRB 191 "3-15-13 Capias to issue fail of c/s [community service] $5,000 @ 10%". . . .

*Id.*, at ¶¶ 13-14.

---

[2] There are other issues surrounding both the doctrines of qualified immunity and quasi-judicial immunity which are analyzed in Plaintiffs' Brief in Opposition (R. 69-1).

Mr. Buy's memo does not state that Ms. Beckham or Mr. Lewis "failed to comply" with any court order. It says, in no uncertain terms, that listed individuals failed community service. First, who knows what this even means? Second, the memo was not sworn under oath. Finally, Judge LeBarron states:

> 15. On March 15, 2013, I issued a Capias for Failure of Community Service for Marcus Lewis pursuant to ORC §2705.02 and ORC §2705.03 based upon the memorandum indicating that Marcus Lewis had failed to comply with my March 1, 2013 Court Order. . . . In issuing this Capias, I wrote a journal entry on the case jacket for *Euclid v. Lewis*, 13 CRB 196 "3-15-13 Capias to issue fail of c/s [community service] $5,000 @ 10%".
>
> 16. On March 15, 2013, I ordered Deputy Clerk Susan Klepac to issue warrants pursuant to ORC §2705.02 and ORC §2705.03 for the arrest of Cachet Beckham and Marcus Lewis. . . .

*Id.*, at ¶¶ 15-16.

The writing "3-15-13 capias to issue fail of c/s/ $5,000 @ 10%" is not a valid journal entry. A Court speaks through its journal. *Brown v. Bentree Development Corp.*, 2nd Dist. No. 6646, 1980 WL 352595, *3 (Nov. 17, 1980). According to Judge LeBarron, "The Court's Journal is the outer case jacket in which the court file is stored in." (R. 72-1, LeBarron Affid. at ¶ 9.) With all due respect, this is not true and the dockets of Ms. Beckham and Mr. Lewis confirm this. On March 2, 2013, Ms. Beckham's motion to perform community service in lieu of fines and costs was granted. On this same date, the Court's docket reflects "Journal Free Form created in *Book 215 Page 15*" (Ex. 27, Beckham Docket [Emphasis added]). In addition, on April 2, 2013, the Court vacated Ms. Beckham's community service and released her from jail. *Id.* This order was likewise recorded in the journal according to the docket. *Id.*

5

Interestingly, despite Judge LeBarron's assertion that the words "3/15/13 capias to issue fail of c/s $5,000 @ 10%" constitute a journal entry, there is no record on the docket that these words were ever properly journalized as was the case with other orders.  A review of Mr. Lewis' docket similarly reveals that no order was journalized by the judge regarding the warrants.  (Ex. 28, Lewis Docket.) She did, however, journalize Mr. Lewis' community service order and his release from jail. *Id.*  Where is the Order directing the clerk to issue the warrants?  The dockets do not reflect a capias, do not reflect a journal and page as they do with the Judge's other orders. (Exs. 27-28, Case Dockets.)

The warrants themselves evidence that they are not bench warrants but instead clerk's warrants governed by Crim. R. 4 and R.C. 2935.18 because they are signed by the Clerk and refer to the requirements of the rules, i.e. they recite, "Sworn to and subscribed in my presence on 03/18/2013", although the blank space is not filled in.  There is no indication as to who was sworn or what was said. (R. 70-5, pp. 2-3, Beckham and Lewis Warrants.)

The facial invalidity of these warrants is especially apparent compared to the facts in *Webb* where the warrants were found to be facially invalid because the sworn complaint merely recited the statutory language for receiving stolen property. *Webb*, 494 F.Supp.2d at 789-792. The Lewis and Beckham warrants were issued without complaint or affidavit, contain no sworn statement and do not evidence probable cause in any form.  They were obviously invalid and Defendants Nolan, Stepec and McIntyre are not entitled to qualified immunity as a matter of law.

Plaintiffs should also mention here that Crim.R. 4(A)(2) provides in pertinent part: "In misdemeanor cases where a warrant has been issued to a law enforcement officer, the officer, unless the issuing authority includes a prohibition against it in the warrant, may issue a summons in lieu of executing the warrant …" to permit the arresting officer and the jail personnel to issue

6

summons to the arrestees when circumstances indicate that it is probable the Defendant will appear in response to the summons. Moreover, Crim.R. 4(F) provides in pertinent part:

> **(F) Release after arrest.** In misdemeanor cases where a person has been arrested with or without a warrant, the arresting officer, the officer in charge of the detention facility to which the person is brought or the superior of either officer, without unnecessary delay, may release the arrested person by issuing a summons when issuance of a summons appears reasonably calculated to assure the person's appearance. . . .

No consideration was given to any of the facts which would have justified service of a summons in lieu of arrest in this case (assuming the warrants were valid) and in lieu of incarceration. A summons in lieu of arrest and incarceration would have been objectively reasonable in light of the following: (1) the warrants were questionable (at least); (2) the subjects were on the way from community service to pick up their children; (3) they were carrying community service documents; (4) Ms. Beckham was pregnant with no prior offenses; (5) they were not armed, were cooperative, and no actual underlying offense; (6) the Plaintiffs had significant family ties and were local residents; and (7) a long detention would be required until their court appearance. (R. 70-3 and 70-4, Beckham and Lewis Affidavits.)

    **B.    Officers Buy, Travis and Nolan Are Employees of the City of Euclid and Subject to the City's Control.**

Judge LeBarron also touches on the issue of Eleventh Amendment immunity in her affidavit. She states that she appointed Defendants Buy Travis and Nolan, that they are employees of the Euclid Municipal Court, and that "The City of Euclid has no authority to direct or control the employees of the Euclid Municipal Court or the Euclid Municipal Court Probation Department." (R. 72-1, LeBarron Affid. at ¶3-7.) Although Plaintiffs provided this Court with multiple documents which evidence Defendants' employment status, Judge LeBarron's affidavit fails to mention them and requires a response.

7

In their Reply, Defendants state "Plaintiffs spend a significant portion of their brief alleging that the Euclid Municipal Court is actually a department of the City of Euclid.  This is simply not true as a matter of law."  (R. 72, Buy/Travis/Nolan Reply at p. 8.)

Section C of Plaintiffs' Brief in Opposition includes the following documentary evidence: (1) performance evaluations entitled "City of Euclid Employee Status Notice" signed by Judge LeBarron as "Department Director" and by the Mayor, for Buy, Travis and Nolan for each year they worked for the City (whether at the Court or another location) (Exhibit 21); (2) A "City of Euclid Employee Injury Report" signed Mr. Buy above "Employee" and submitted to the City of Euclid (Exhibit 22); (3) Various City of Euclid employment policies signed by Buy and Travis (Exhibit 22); (4) Requests for FMLA leave from the City of Euclid signed by Buy and Travis in their capacity as "probation officer" (Exhibit 22); and (5) Ms. Travis' employment application to the City in which she agrees that her employment can be terminated at any time at the option of either the City or herself. (Exhibit 22)[3] (R. 69-1, Plaintiffs' Combined Opposition at pp. 23-24.) Moreover, according to the City's Audit Report, the Internal Service Fund holds the money used by the City to insure its employees against liability in accord with Euclid Codified Ordinance 107.01. (R. 70-26, City of Euclid 2011 Audit Report, p. 32.) The City's liability for a judgment against the Defendants is the most important consideration when making an Eleventh Amendment immunity determination.  *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003); *Brotherton v. Cleveland*, 173 F.3d 552 (6th Cir. 1999); *Cash v. Hamilton County Dept. of Adult Probation*, 388 F.3d 539 (6th Cir. 2005).

---

[3] This application resulted in her employment at the Probation Department. (R. 62-5, Travis 8/13/2015 deposition transcript at p. 11.)

**C.     The City of Euclid has persistent, well-settled practices regarding the arrest of individuals for "failure of community service" that violate 5th and 14th Amendment Due Process.**

The City of Euclid also now relies on Judge LeBarron's affidavit to try to establish that it is entitled to judgment on Plaintiffs' *Monell* claims. (R. 73, Euclid/Stepec/McIntyre Reply at p. 9.) Euclid's sole argument is that Plaintiffs are imputing "the conduct of the Euclid Municipal Court and the employees of the Euclid Municipal Court's Probation Department to the City of Euclid." (R. 73, Euclid/Stepec/McIntyre Reply at p. 9.)  The City argues, all evidence to the contrary notwithstanding, that Nolan is now a "Court" employee, not a Euclid Police Department or City employee as his employment documents indicate and contrary to his testimony. Nolan also testified at deposition that his current duties and his duty station are no different under his deputy bailiff title than they were under his warrant officer title.  (R. 62-4, Robert Nolan 9/04/2015 deposition transcript at pp. 34-36.)

Assuming the warrants were otherwise valid, when an alleged contempt occurs out of the Court's presence (i.e. indirect contempt), as here, due process requires procedural safeguards such as:  (1) written notice of the violations alleged, (2) disclosure of the evidence against the alleged contemnor, (3) the right to be heard and present evidence, (4) the right to cross-examine the witnesses testifying against the contemnor, (5) the right to appear before a neutral and detached hearing officer and (6) a written statement from the hearing officer relaying what evidence was relied upon in reaching the decision that the acts alleged occurred and violated a valid order. *State v. Smith*, 7th Dist. No. 01 CA 187, 2002-Ohio-6710, ¶ 10; citing *Morrissey v. Brewer*, 408 U.S. 471 (1972).

The circumstances in *Smith*, though less egregious, are relevant to Ms. Beckham and Mr. Lewis' arrest. Smith pled no contest to a misdemeanor (public indecency) and was placed on probation. As part of his probation, he was required to attend counseling and when he failed to do so he was summarily punished for contempt at his next hearing. The Second District reversed the trial court's contempt finding because Smith was not afforded due process. Specifically, he was afforded only one hearing and he was not notified that he was being charged with contempt. Ms. Beckham and Mr. Lewis were afforded no process. They were simply arrested on the warrants and hauled off to jail for five and four days respectively. No evidence against them was ever disclosed, there was no finding of contempt, and they were not afforded an opportunity to be heard prior to the warrants being issued.

Plaintiffs have produced like warrants for the additional 10 people on Mr. Buy's list (R. 70-14, Warrants) that were similarly issued on the same day and presumably executed by Euclid officers for "failure of community service". The inference that Defendant Euclid has a persistent practice of denying due process to misdemeanor and traffic defendants granted community service is appropriate and whether that is true is a question of fact.

### III. CONCLUSION

The arrest and incarceration of Beckham and Lewis violated their clearly established rights not to be deprived of their liberty without probable cause.

Whether the writing "3-15-13 capias to issue fail of c/s $5,000 at 10%" on the backs of the case jackets was a valid judicial order and whether the warrants, valid or not, were issued by the clerk on the authority of a valid judicial order are questions of fact.

Whether the individual Defendants acted reasonably, whether they were reckless and whether they were employees of the City are all questions of material fact which remain.

The casual and haphazard process in Euclid was the very cause of the erroneous arrest and detention of Cachet Beckham and Marcus Lewis. Whether any immunity applies are issues that cannot be resolved on summary judgment.

WHEREFORE, Cachet Beckham and Marcus Lewis and ask the Court to deny Defendants Buy, Travis and Nolan's Motion for Summary Judgment.

Respectfully submitted,

__/s/ Brian M. White_____
NANCY C. SCHUSTER #0020690
BRIAN M. WHITE #0091405
Schuster & Simmons Co. L.P.A.
The Bevelin House
2913 Clinton Avenue
Cleveland, Ohio 44113
(216) 348-1100 (Telephone)
(216) 348-0013 (Facsimile)
ss@apk.net (e-mail)

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been filed electronically this 18th day of December, 2015. Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System. Parties may access this filing through the Court's system.

                                                                             */s/ Brian M. White*
                                                                     NANCY C. SCHUSTER #0020690
                                                                     BRIAN M. WHITE #0091405

                                                                    *Counsel for Plaintiffs*